# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| LARUN MILLER, | ) | CASE NOS. 1:14-CR-278 |
| | ) | 1:18-CV-2210 |
| PETITIONER, | ) | JUDGE SARA LIOI |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| UNITED STATES OF AMERICA, | ) | |
| RESPONDENT. | ) | |

Before the Court is the motion of *pro se* petitioner Larun Miller ("Miller") to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. (Doc. No. 97 ["Mot."].) Respondent United States of America (the "government") opposes the motion, (Doc. No. 101 ["Opp'n"]), and Miller has filed a reply. (Doc. No. 108 ["Reply"].) The Court granted Miller leave to file a further memorandum in support of his motion and afforded him leave to exceed the page number limit for such a filing. (Doc. No. 112 (Supplemental Brief ["Suppl."]).) For the reasons that follow, Miller's § 2255 motion is DENIED.

**I. BACKGROUND**

On June 22, 2005, a federal indictment issued charging Miller with travel with intent to engage in illicit sexual conduct with a 14-year old girl, in violation of 18 U.S.C. § 2423(b). (Case No. 5:05-cr-300, Doc. No. 7 (Indictment).) This 2005 case was assigned to the docket of the Honorable Dan Polster. On August 23, 2005, pursuant to a plea agreement, Miller entered a counseled plea of guilty to one count of violating 18 U.S.C. § 2423(b). (*Id.*, Doc. No. 13 (Plea

Agreement).) On November 7, 2005, Judge Polster sentenced Miller to a term of imprisonment of 105 months, followed by 10 years of supervised release. (*Id*., Doc. No. 16 (Judgment).) As part of the conditions of his supervised release, Miller was required to comply with all registration requirements as a sexual offender. (*Id*.)

Shortly after his release from prison on the 2005 case, Miller began an online relationship with an individual he believed was a fourteen year old girl from Colorado named "Jordan". In reality, "Jordan" was an undercover investigator for the Jefferson County District Attorney's Office, investigating internet crimes against children. Between May 28, 2014 and June 2, 2014, the investigator—using the persona of "Jordan" and sometimes aided by a female officer—communicated with Miller via cellular phone calls, text messages, and the internet. The investigator ultimately determined that Miller was a registered sex offender in Ohio, and the investigator contacted law enforcement in Ohio.

On June 2, 2014, law enforcement in Ohio learned that Miller was not living at his registered address. The following day (June 3, 2014), members of the United States Marshals Service and local state law officers, working together as part of a joint task force, arrested Miller at his workplace and transported him to the Wickliffe Police Department. Once at the police station, Miller was interviewed by a deputy federal marshal and a state police officer, after he was read his *Miranda* rights and signed a written waiver. During the course of the interview, Miller was asked questions regarding his failure to register as well as his online interactions with "Jordan." There is no dispute that a federal arrest warrant did not issue until July 23, 2014. Miller was arrested on federal charges on July 25, 2014 and was arraigned before a federal magistrate judge that same day. At his arraignment, Miller waived his right to a preliminary hearing. (Doc.

No. 5.) A federal indictment issued on August 20, 2014. (Doc. No. 7.)

Pursuant to the superseding indictment, Miller was charged with the following: attempted coercion and enticement of a minor to engage in unlawful sexual activity, in violation of 18 U.S.C. § 2422(b); attempted enticement or coercion of a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, in violation of 18 U.S.C. § 2251(a) and (e); knowingly failing to register and update registration as a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act ("SORNA"), in violation of 18 U.S.C. § 2250(a) and (c); and committing a felony offense involving a minor while being required to register as a sex offender, in violation of 18 U.S.C. § 2260A. (Doc. No. 35.) The SORNA violations also formed the basis for supervised release violations in Miller's 2005 case.[1]

At the July 25, 2014 arraignment, Attorney Darin Thompson of the Federal Public Defender's Office was appointed to represent Miller. Thompson subsequently moved to continue the trial date, and at a hearing on October 16, 2014, Miller indicated in open court that he concurred with his counsel's request for a continuance and ultimately executed a waiver of his speedy trial rights. (Doc. No. 12 (Waiver/Ends of Justice); Doc. No. 26 (Hearing Transcript) at 100–04[2].) The Court granted the motion, finding that a continuance best served the ends of justice. (*Id*.) Defense counsel later moved for a second continuance. (Doc. No. 14.) In the December 23, 2014 hearing on the motion, Miller, once again, indicated that he concurred in his counsel's request and executed another waiver of his speedy trial rights. (Doc. No. 25 (Hearing

---

[1] By agreement with the undersigned, Judge Polster transferred the supervised release violations to the undersigned as a related case. (Case No. 5:05-cr-300, Doc. No. 28.)

[2] All page numbers refer to the page identification number generated by the Court's electronic docketing system.

Transcript) at 93–97; Doc. No. 15 (Waiver/Ends of Justice Order).) Following a hearing on March 18, 2015—and at Miller's request—Attorney Thompson was replaced by Attorney Donald Malarcik. (*See* Doc. No. 31; Minutes from Mar. 18, 2015.) The Court further continued the action on multiple occasions at the request of Miller or his counsel. (Doc. No. 32 (Motion to Continue); Doc. No. 33 (Waiver/Ends of Justice Order); Doc. No. 38 (Waiver/Ends of Justice Order).)

During the pendency of the case, Miller and his counsel also caused numerous substantive pretrial motions to be filed. In one such motion, Miller sought the suppression of the statements he made during his interview at the Wickliffe police station on June 3, 2014. Following an evidentiary hearing, the Court granted the motion in part. (Doc. No. 34 (Memorandum Opinion).) While the Court concluded that Miller had initially knowingly and voluntarily waived his right to counsel, the Court determined that there came a point in the interview where he revoked his waiver and invoked his right to remain silent. (*Id*. at 152.) Accordingly, the Court suppressed any statements Miller made after the point he revoked his waiver. (*Id*.)

The Court conducted a bench trial, beginning on January 25, 2016 and concluding on January 27, 2016, after which the Court took the matter under advisement. On February 1, 2016, the Court issued its findings of fact and conclusions of law, finding Miller guilty on all four counts in the superseding indictment. (Doc. No. 61.) At the sentencing hearing conducted on May 19, 2016, Miller admitted to two of the supervised release violations, and the Court found Miller guilty of the remaining violations based upon the testimony and evidence offered at trial. The Court sentenced Miller to a term of imprisonment of 540 months in this case and 36 months

imprisonment for the supervised release violations in the 2005 case, for an aggregate sentence of 576 months, to be followed by lifetime supervised release with SORNA registration requirements. (Doc. No. 70 (Judgment); Case No. 5:05-300, Doc. No. 32 (Order on Violation).).

Miller unsuccessfully appealed the Court's judgment to the Sixth Circuit Court of Appeals and was ultimately denied certiorari review by the United States Supreme Court. (Doc. Nos. 92, 95.) Before the Sixth Circuit, Miller challenged as "outrageous conduct" tactics used by the interviewing officers on June 2, 2014, the sufficiency of the evidence supporting the first two counts of the superseding indictment, and the Court's partial denial of his suppression motion. (*See* Doc. No. 92.) The Sixth Circuit rejected each argument on the merits.

Miller filed the present motion to vacate on September 25, 2018. He raised ten grounds for relief: Ground One (Ineffective Assistance of Counsel), Ground Two (Violation of Fed. R. Crim. P. 5(a)), Ground Three (Speedy Trial Violation), Ground Four (Due Process), Ground Five (Collusion), Ground Six (Deprivation of Counsel), Ground Seven (Right to Confrontation), Ground Eight (Procedural and Substantive Trial Errors), Ground Nine (Abuse of Discretion), and Ground Ten (Prosecutorial Misconduct). Miller also sought leave to amend his petition to raise additional grounds. The Court denied the motion to amend, finding that the grounds Miller sought to add were either sufficiently raised in his existing § 2255 motion or had been rejected by the Sixth Circuit on direct appeal. (Doc. No. 106 (Order); *see* Doc. No. 100 (motion to amend).)

**II. STANDARD OF REVIEW**

A federal prisoner may attack the validity of his sentence by filing a motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 in the district court where he was

sentenced. Section 2255 sets forth four grounds upon which a federal prisoner may state a claim for relief: "[1] the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] [the sentence] is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a).

To prevail under § 2255, "a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993)). "Relief is warranted only where a petitioner has shown 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Id.* (quoting *Davis v. United States*, 417 U.S. 333, 346, 94 S. Ct. 2298, 41 L. Ed. 2d 109 (1974)).

The movant bears the burden of articulating sufficient facts to state a viable claim for relief under § 2255. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (per curiam). Vague and conclusory claims that are not substantiated by allegations of specific facts with some probability of verity are not enough to warrant relief. A § 2255 motion may be dismissed if it only makes conclusory statements without substantiating allegations of specific facts and fails to state a claim cognizable under § 2255. *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961); *see Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972).

A criminal defendant may not utilize a § 2255 motion as a substitute for a direct appeal. *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003); *Capaldi v. Pontesso*, 135 F.3d 1122, 1124 (6th Cir. 1998) ("An application under § 2255 is an extraordinary remedy and should

not be considered a substitute for direct appeal."). To assert a claim not raised on direct appeal, a petitioner ordinarily must show cause for the default and prejudice. *See Bousley v. United States*, 523 U.S. 614, 622, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998); *United States v. Frady*, 456 U.S. 152, 167–69, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982).

When a factual dispute arises in a § 2255 proceeding, an evidentiary hearing is required "'to determine the truth of the petitioner's claims.'" *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)). A hearing is not necessary, however, when a petitioner's claims "'cannot be accepted as true because they are contradicted by the record, inherently incredible, or [are] conclusions rather than statements of fact.'" *Id.* (quoting *Arrendondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). Where, as here, the judge considering the § 2255 motion also presided over the trial, the judge may rely on her recollections of the trial. *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996).

### III. DISCUSSION

#### A. Claims Raised on Direct Appeal

In his sixth ground, Miller argues that he was unconstitutionally deprived his right to counsel during the "initial stages" of the investigation. (Suppl. at 1856.) In Ground Nine, Miller insists that the Court abused its discretion in determining that the government had satisfied its burden of proving the essential elements of Count One (attempted coercion or enticement of a minor to engage in unlawful sexual activity, in violation of 18 U.S.C. § 2422(b)) and Count Two (attempted enticement or coercion of a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, in violation of 18 U.S.C. § 2251(a) and

7

(e)). (*Id.* at 1857–58.)

As set forth above, on direct appeal Miller specifically challenged the Court's determination that he had waived his right to counsel during his initial interview with law enforcement and further challenged the sufficiency of the evidence supporting Counts One and Two of the superseding indictment. "[A] § 2255 motion may not be employed to relitigate an issue that was raised and considered on direct appeal absent highly exceptional circumstances, such as an intervening change in the law." *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999); *see DuPont v. United States*, 76 F.3d 108, 110–11 (6th Cir. 1996). While he offers slightly nuanced arguments in his motion to vacate, the essence of these claims were raised on direct appeal and addressed by the Sixth Circuit. Thus, to the extent these claims were raised on direct appeal, and in the absence of extraordinary circumstances, Miller is barred from reasserting them here.[3]

### B. Ineffective Assistance of Counsel

With the exception of Ground One (Ineffective Assistance of Counsel), the remaining claims should have been raised on direct appeal but were not, and Miller cannot use § 2255 "to circumvent the direct appeal process." *Regaldo*, 334 F.3d at 528 (citing *Frady*, 456 U.S. at 167–68). "The Supreme Court consistently has determined that 'to obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal.'" *Id.* (quoting *Frady*, 456 U.S. at 166). "Accordingly, claims that could have been raised on direct appeal, but were not, will not be entertained via a motion under § 2255 unless the petitioner shows: (1) cause and

---

[3] To the extent Ground Four (Due Process) raises issues that were raised and rejected on direct appeal, Miller is barred from raising those issues as well. (*See* Suppl. at 1848-49, 1850, 1853.)

8

prejudice to excuse his failure to raise the claims previously; or (2) that he is 'actually innocent' of the crime." *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013) (citing *Bousley*, 523 U.S. at 622).

Miller does not argue that he is actually innocent of the charges. Rather, in Ground One, he suggests that his trial and appellate counsel provided constitutionally ineffective assistance. In support of this claim, he argues, in part, that counsel erred in failing to raise some of the asserted grounds at trial or on direct appeal. Ineffective counsel may amount to "cause" that excuses procedural default. *See Nagi v. United States*, 90 F.3d 130, 134–35 (6th Cir. 1996). The Court must determine both whether Miller's ineffective assistance of counsel claim is viable as a stand-alone claim, and whether it can serve as the cause to excuse the procedural default for Grounds Two through Five.

Miller's ineffective assistance of counsel claim is governed by the familiar standard established in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Under this standard, a petitioner must demonstrate that counsel's performance was deficient, and that this deficient performance caused prejudice to the petitioner. *Strickland*, 466 U.S. at 687. To demonstrate that counsel's performance was deficient, a petitioner must show that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the [petitioner] by the Sixth Amendment." *Id*. To establish that the deficient performance caused prejudice to the petitioner, he must show that the counsel's errors were so serious that the petitioner was deprived a fair trial. *Id*. Essentially, a petitioner must establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

"The reviewing court's scrutiny of counsel's performance is highly deferential," and "'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *McQueen v. Scroggy*, 99 F.3d 1302, 1311 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 689, 690), *overruled on other grounds by In re Abdur' Rahman*, 392 F.3d 174 (6th Cir. 2004). A petitioner's disagreements with the strategies or tactics of counsel are not enough to support an ineffective assistance of counsel claim. *Strickland* at 689; *see McQueen*, 99 F.3d at 1311 ("[T]rial counsel's tactical decisions are particularly difficult to attack, and a defendant's challenge to such decisions must overcome a presumption that the challenged action might be considered sound trial strategy.") (quotation marks and citations omitted).

A criminal defendant does not have a constitutional right to demand that his trial counsel raise every possible issue. A failure to raise a claim will not amount to ineffectiveness so long as counsel "exercise[d] reasonable professional judgment." *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003). In fact, it is well settled that counsel cannot be ineffective for refusing to raise baseless arguments. *See Hoffner v. Bradshaw*, 622 F.3d 487, 499 (6th Cir. 2010) (finding that counsel was not constitutionally ineffective for not pursuing meritless claims); *Krist v. Foltz*, 804 F.2d 944, 946 (6th Cir. 1986) (noting that "[a]n attorney is not required to present a baseless defense or to create one that does not exist").

Similarly, "[t]he Supreme Court has made clear that a criminal defendant has no constitutional right to demand that appellate counsel raise every possible colorable issue on appeal." *Lee v. Haas*, 197 F. Supp. 3d 960, 973 (E.D. Mich. 2016) (citing *Jones v. Barnes*, 463 U.S. 745, 751, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983)). "[W]innowing out weaker arguments

on appeal and focusing on those most likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy," *Smith v. Murray*, 477 U.S. 527, 536, 106 S. Ct. 2661, 91 L. Ed. 2d 434 (1986), and a failure to raise a claim will not amount to ineffectiveness so long as counsel "exercise[d] reasonable professional judgment." *Joshua*, 341 F.3d at 441. Further, even if the rejected claim is non-frivolous, the required showing of prejudice cannot be made if the claim lacks merit. *Burton v. Renico*, 391 F.3d 764, 774 (6th Cir. 2005). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002) (quotation marks and citation omitted); *see also Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001) (holding that appellate counsel "cannot be ineffective for a failure to raise an issue that lacks merit").

In regard to investigation, defense counsel has a duty to conduct reasonable investigations or make a reasonable decision that investigations are unnecessary. *See Sims v. Livesay*, 970 F.2d 1575, 1580–81 (6th Cir. 1992) (citing *Strickland*, 466 U.S. at 691). "While the temptation to rely on hindsight is particularly strong in the context of ineffective assistance claims based on counsel's failure to investigate, the court must conclude that counsel's strategic choices made after less than complete investigation are not constitutionally deficient if a reasonable professional judgment supports the limitations on investigation." *Carson v. United States*, 3 F. App'x 321, 324 (6th Cir. 2001) (citing *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998)).

    *1.  Delay in Presentment*

Miller insists that his trial counsel was ineffective for failing to raise a delay in

presentment claim. (Suppl. at 1837–38; *see* Ground Two (Rule 5(a)); Ground Five (Collusion).) Constitutional law dictates that "federal courts . . . must exclude confessions obtained during a period of undue delay in bringing the defendant[] before a magistrate. The rationale for this ruling is found in preventing the police from obtaining confessions during the period of delay so as to avoid the giving of notice to the accused that he has certain rights, including the right to counsel, and the right to remain silent." *United States v. Torres*, 663 F.2d 1019, 1023 (6th Cir. 1981) (citing *McNabb v. United States*, 318 U.S. 332, 63 S. Ct. 608, 87 L. Ed. 819 (1943); *Mallory v. United States*, 354 U.S. 449, 77 S. Ct. 1356, 1 L. Ed. 2d 1479 (1957)). Known as the *McNabb-Mallory* rule, this rule has been codified at Rule 5(a) of the Federal Rules of Criminal Procedure and requires that an arresting officer take the arrested person before a federal magistrate "without unnecessary delay." *See Torres*, 663 F.2d at 1023 (quoting Fed. R. Crim. P. 5(a)).

Under Rule 5(a), the period of delay is measured from the beginning of federal detention. *Torres*, 663 F.2d at 1023 (collecting cases); *see United States. v. Davis*, 459 F.2d 167, 170 (6th Cir. 1972). Because Miller was arraigned in federal court and waived his right to a preliminary hearing on July 25, 2014, the same day he was taken into federal custody, the government argues that there was no Rule 5 violation. (Opp'n at 1582.)

Nonetheless, Miller argues that federal authorities colluded with state law enforcement to detain him in state custody from June 3, 2014 to July 25, 2014. "When . . . federal and state officials have a working arrangement to elicit information from an accused before taking him before a magistrate, delay is measured from the time state custody commences." *United States v. Barlow*, 693 F.2d 954, 958 (6th Cir. 1982) (collecting cases). "However, a working relationship

alone will not start the *McNabb-Mallory* clock. There must also be evidence that the arrangement between state and federal authorities was 'illegitimate,' that is, that it was 'for the purpose of aiding and abetting the federal officers in carrying on interrogation of the suspect in violation of Federal Rule 5(a) requiring prompt arraignment.'" *United States v. Myers*, 354 F. Supp. 3d 785, 796 (E.D. Mich. 2019) (quoting *Davis*, 459 F.2d at 170) (further quotation marks and citation omitted); *see Barlow*, 693 F.2d at 958–59 ("This collaborative effort must be specifically designed to circumvent the requirements of Rule 5(a), that is, designed to produce evidence which would not be admissible if the defendant were in federal custody the entire time.") The burden of proving an improper motive rests with the defendant. *See Torres*, 663 F.2d at 1024 (citing cases).

Here, the record is clear that state and federal law enforcement were openly working together as part of a joint task force to investigate the crimes that formed the basis for the present federal action, as Miller was initially interviewed by members federal and state law enforcement. But while there was surely a working relationship, Miller has failed to come forward with *any* evidence that this collaborative effort was undertaken to circumvent Rule 5(a). Neither Miller's "bare suspicion" of a collusive scheme, nor his request to develop such evidence in an evidentiary hearing, is sufficient to meet his burden of proof. *See Torres*, 663 F.2d at 1024. Moreover, he has failed to explain how further probing by his trial counsel would have uncovered such a torrid plot. For this reason alone, Miller's counsel cannot have been ineffective for failing to raise this issue.[4]

---

[4] To the extent Ground Four (Due Process) raises a delay in presentment claim, it would also fail on the merits for the same reason. (*See* Suppl. at 1843, 1845, 1847, 1850-51.)

Such a claim would have failed for the additional reason that Miller waived his *Miranda* rights before giving his statement to federal and state authorities. "[W]aiver of one's *Miranda* rights also constitutes a waiver under *McNabb-Mallory*." *Barlow*, 693 F.2d at 959 (collecting cases). In the present case, the Court found, and the Sixth Circuit affirmed on appeal, that Miller waived his *Miranda* rights before giving his statement, and he is precluded, therefore, from seeking the protections of the *McNabb-Mallory* rule, as codified in Rule 5(a).

    2.    *Speedy Trial*

Miller also insists that trial counsel erred in failing to raise a speedy trial violation. (Suppl. at 1837; *see* Ground Three (Speedy Trial).) The government counters that defense counsel could not have been ineffective for failing to raise this issue as the time limit under the Speedy Trial Act was not exceeded.

"The [Speedy Trial] Act generally requires a federal criminal trial to begin within seventy days after a defendant is charged or makes an initial appearance, 18 U.S.C. 3161(c)(1), but the Act contains a detailed scheme under which certain specified periods of delay are not counted."[5] *United States v. Brown*, 498 F.3d 523, 529 (6th Cir. 2007). Among the exclusions found in the Act relevant to the present case are: delays resulting from the filing of pretrial motions and delays resulting from the granting of a continuance upon the finding that the ends of justice served by a continuance outweigh the best interest of the public and the defendant in a speedy

---

[5] The Speedy Trial Act also requires that an indictment be filed within thirty days of the date of arrest. 18 U.S.C. § 3161(b). Miller argues that his statutory rights were violated because he was arrested on June 3, 2014 and the federal indictment did not issue until August 20, 2014. (Suppl. at 1842.) However, as set forth above, his time in state custody does not count toward the pre-indictment running of the federal statute. Here, Miller was arrested and taken into federal custody on July 25, 2014, and the indictment was filed within 30 days of his federal arrest. Accordingly, there was no preindictment violation, and counsel was not ineffective for failing to argue otherwise.

trial. 18 U.S.C. § 3161(h).

Miller acknowledges, as he must, that shortly after the indictment issued, his counsel moved for a continuance, citing the need for additional time to prepare and review discovery. (Doc. No. 11.) He offers, without support, his "belief" that counsel requested the continuance "to assist the government in concealing their circumventing the time requirement of the Speedy Trial Act." (Suppl. at 1842.) Yet, the record reflects that Miller consented to the continuance and executed a waiver of his right to a speedy trial. (Doc. No. 12.) Where, as here, a defendant requests or consents to a continuance, he may not complain about the exclusion of time from the speedy trial clock. *United States v. Baker*, 562 F. App'x 447, 452 (6th Cir. 2014) (citing, among authority, *United States v. Howard*, 218 F.3d 556, 562 (6th Cir. 2000)). Even without Miller's consent, however, "[t]he court satisfied the ends-of-justice requirements because it tracked the language of the statute and granted the motion[] to continue to give the defense additional time to prepare." *See Baker*, 562 F. App'x at 453 (citing *United States v. Jordan*, 544 F.3d 565, 666 (6th Cir. 2008)). (Doc. No. 12 at 41; Minutes from Oct. 16, 2014.)

Miller filed additional motions for continuances, and, in each instance, upon Miller's waiver of his statutory right to a speedy trial, the Court granted the motion after making the proper ends-of-justices determinations. (*See* Doc. Nos. 14, 15, 32, 33; Minutes from Dec. 23, 2014, Feb. 18, 2015, Feb. 27, 2015.) In each instance, Miller signed an ends-of-justice waiver, and the Court conducted a colloquy with Miller regarding his desire to waive his speedy trial rights. (*See* Doc. Nos. 15, 33, 38.) In fact, Miller's third request for a continuance was prompted by his *pro se* letter to the Court requesting the appointment of new counsel. After a hearing, the Court appointed new counsel and continued the matter to permit new counsel the opportunity for

effective preparation. (*See* Minutes from Mar. 18, 2015.)

In addition to Miller's *pro se* motion for new counsel, the Court received numerous other uncounseled and counseled defense motions—including motions to dismiss, a motion to sever, and motions to suppress—that each had the effect of further tolling the running of the speedy trial clock. (*See* Doc. Nos. 20, 31, 41, 55, 60.) Because all of these periods of delay are properly excluded in computing the time limitations specified in § 3161, Miller would have been unable to establish that his statutory right to a speedy trial had been violated. As such, his counsel cannot have been ineffective for failing to raise this baseless claim.

### 3. *Due Process*

Ground Four is a catchall claim that encompasses many of the claims previously addressed herein or raised and rejected on direct appeal. While Miller insists that he has "overwhelming evidence to support his allegations of misconduct committed by members of the United States [M]arshal's Service and [t]he United States Attorney's Office," he fails to identify *any* evidence to support his recurring allegations of collusion, misdirection, and concealment.[6] (*See* Suppl. at 1850.) These conclusory allegations, unsupported by articulated facts, are insufficient to state a viable claim for relief. *See McQueen*, 58 F. App'x at 76; *Green*, 454 F.2d at 53. Because these claims would not entitle Miller to relief from his sentence, counsel was not ineffective for failing to raise them.

---

[6] For example, Miller claims that his trial counsel was ineffective for failing to investigate and challenge the search of his vehicle and cell phone on the basis that his arrest on supervised release violations was a "ruse" for obtaining evidence to support the charges in the present case. However, the fact remains that Miller admitted to two of the supervised release violations and the evidence at trial established the remainder of the violations. At the suppression hearing, trial counsel elected to focus on the voluntariness of Miller's waiver of his *Miranda* rights, and he was successful in getting a portion of Miller's statements suppressed. Selecting to focus on the strongest issues, while discarding those that find no support in the record, is the hallmark of effective advocacy and cannot support a finding of ineffectiveness.

### 4. 18 U.S.C. § 2260A

Miller also argues that counsel was ineffective for failing to argue that 18 U.S.C. § 2260A was unconstitutional, as it was applied to him, because a violation of § 2260A requires offense conduct involving an actual minor and he was convicted of misconduct involving an agent posing as a minor. In support, he cites *United States v. Dahl*, 81 F. Supp. 3d 405, 407 (E.D. Pa. 2015), wherein a district court in the Third Circuit ruled that the language in § 2260A "involving a minor" applies only to actual individuals under the age of 18 and not agents posing as underage persons. However, in *United States v. Slaughter*, 708 F.3d 1208 (11th Cir. 2013), the Eleventh Circuit declined to reach the question of whether § 2260A, without limitation, always required the involvement of an actual minor, because the defendant's § 2260A conviction was predicated on his conviction for attempted enticement of a minor under § 2422. Because § 2422 permitted attempted crimes (including attempts involving government agents posing as minors), and finding "nothing in the plain language of § 2260A that negates the plain language of § 2422(b)," the court affirmed the defendant's § 2260A conviction. *Id.* at 1215–16 ("when a § 2260A conviction is predicated on a violation of § 2422, a defendant may be convicted even where his conduct did not involve an actual minor"); *see also United States v. Beckman*, 624 F. App'x 909, 919 (6th Cir. 2015) (citing *Slaughter* with favor for the proposition that § 2422 includes attempted crimes). Like the defendant in *Slaughter*, Miller's § 2260A's conviction was predicated on a violation of § 2422, well as a violation of § 2251, both crimes encompassing attempted acts. (*See* Superseding Indictment at 159–61.)

All federal statutes are presumed constitutional. *Munn v. Illinois*, 94 U.S. 113, 123, 24 L. Ed. 77 (1876); *see Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 694 (6th Cir. 2014). At best,

Miller has identified a split in persuasive authority as to whether § 2260A, a presumptively constitutional statute, can be satisfied by attempted crimes. Given the lack of binding authority and the fact that Miller's § 2260A conviction was premised on crimes that were properly charged as attempts, the Court cannot find that trial counsel's failure to raise a constitutional challenge to § 2260A fell outside the "wide range of reasonable professional assistance[.]"[7] *Strickland*, 466 U.S. at 689.

Because none of his constitutional arguments has merit, Miller's trial counsel was not ineffective for failing to pursue them, and Miller cannot establish either prong of the *Strickland* standard. *See Burton*, 391 F.3d at 774 (the required showing of prejudice for an ineffective assistance of counsel claim cannot be made if the unasserted argument lacks merit); *Goff v. Bagley*, 601 F.3d 445, 469 (6th Cir. 2010) (appellate counsel was not ineffective for failing to raise a patently frivolous argument).

Of course, even if Miller could meet the *Strickland* standard for ineffectiveness as to his first ground for relief, it still would not be sufficient to overcome the procedural bar to federal review as to the remaining defaulted claims because "actual prejudice to excuse a habeas petitioner's procedural default requires more than the prejudice prong under *Strickland*." *Jones v. Bell*, 801 F.3d 556, 563 (6th Cir. 2015). "In fact, [the court] do[es] not presume actual prejudice even when the counsel's error resulted in *Strickland* prejudice." *Id*. Instead, to satisfy this

---

[7] Miller also asserts that trial counsel was constitutionally ineffective for failing to argue that the images Miller intended to obtain were not "lascivious," and that Miller did not take a substantial step necessary to sustain a conviction under 18 U.S.C. § 2422(b). However, the record reflects that counsel advanced both of these arguments. (Doc. No. 88 (Trial Transcript I) at 958, 960–61; Doc. No. 90 (Trial Transcript III) at 1405–06.) Further, while Miller complains that trial counsel failed to argue that Miller did not know of the images on his phone, the evidence offered at trial demonstrated that many of the images were associated with chats engaged in by Miller. Therefore, alleging that Miller was unaware of the images would not have been a reasonable trial tactic.

burden, a habeas petition must demonstrate with "a reasonable probability that, but for his counsel's unreasonable failure to raise this issue on appeal, he would have prevailed." *Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013) (quotation marks and citations omitted). Furthermore, a petitioner "must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170. "The 'most important aspect to this inquiry is the strength of the case against the defendant" and whether a trial without errors would still have resulted in *conviction*.'" *Jones*, 801 F.3d at 563 (quoting *Ambrose v. Booker*, 684 F.3d 638, 652 (6th Cir. 2012)). Miller's objection does not demonstrate that prejudice occurred to the point that his entire trial was affected and that he experienced actual and substantial disadvantage.

### C. Remaining Claims are Procedurally Defaulted

The remaining four grounds (Grounds Seven through Ten) were never raised on appeal, nor are they otherwise impacted by Miller's ineffective assistance of counsel claim. These claims, therefore, are procedurally defaulted, and Miller has failed to demonstrate cause and prejudice for the default. *See Regalado, supra*.

### D. Evidentiary Hearing

Finally, the Court finds that Miller is not entitled to an evidentiary hearing. As set forth above, his claims are either in direct conflict with the record, do not entitle him to relief even if true, or were thoroughly considered and rejected on appeal. Further, his conclusory allegations, unsupported by articulated facts, fail to raise any factual disputes for which a hearing is warranted. *Arrendondo*, 178 F.3d at 782; *see also Fontaine v. United States*, 411 U.S. 213, 93 S.

19

Ct. 141, 36 L. Ed. 2d 169 (1973). Accordingly, Miller's request for an evidentiary hearing is DENIED.

IV. **CONCLUSION**

For the foregoing reasons, Miller's motion to vacate, set aside, or correct his sentence (Doc. No. 97) is DENIED and this case is DISMISSED. Further, the Court CERTIFIES that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253; Fed. R. App. P. 22(b).

**IT IS SO ORDERED**.

Dated: August 12, 2019

**HONORABLE SARA LIOI
UNITED STATES DISTRICT JUDGE**